## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 2:24-cr-00057-LEW |
| | ) | |
| JASON JOHNSON-RIVERA | ) | |

## <u>SENTENCING MEMORANDUM</u>

BACKGROUND

Jason Johnson Rivera was born on 9/14/2005 in New Bedford, Massachusetts to

Joel Rivera and Shayna Bretal.[1]  He was the youngest of two children born to his biological

---

[1] *I lived with my mom basically my whole.  I went to local schools in New Bedford, and in Arizona for 2-3 years.  My dad was not involved because he was locked up somewhere in Pennsylvania. He was in prison 3-4 years.  I never asked why.  I didn't know him so I didn't miss him.*

*My mom was always there for me, right, wrong, or indifferent.  She took care of all of our needs, including me and my two sisters.  Jazmyn and I have the same dad.  Jaynani has a different dad and the same mom.  I remember always having a supportive family, pushing me to do better things and to involve myself in activities to keep me out of trouble.*

*I did baseball and basketball, starting when I was 6-7.  I was good at it.  I played second base.  I just enjoyed the sport.*

*I played AAU basketball, starting at 10.  When I was 9-10, my dad came back around.  When I was around, I started getting into trouble at school, getting into fights.  I went to live with my dad, and started the 6th grade with him.  My mom thought I needed a father figure in my life.*

*It was good for a while.  He had me playing football, for the Fairhaven Blue Devils.  I never really liked football.  I was their halfback.*

*I ended up leaving the school because of an allegation against me.  A girl said I touched her sexually.  That was not true.  The juvenile case was dismissed.*

*I transferred back to live with my mother.  I felt really down, like I had nothing to live for.  I felt like no one in the system would believe me.  I felt like I had no one else but my friends in the streets.*

*I never went to high school.  I was in the juvenile youth center for 4 months then 13 months, then 18 months.  Every time I came home I was on house arrest, because of my charges involving firearms.*

parents.  He also had an older half sibling.  He lived with his mom and two older sisters, while his dad was out of the picture; incarcerated in Pennsylvania.  The family moved to Arizona for 2-3 years when he was very young, then back to Massachusetts.

His mom worked hard to keep him active, involved in sports, and out of trouble. He played baseball starting at age 6, basketball at age 10, and football at age 11-12.  He was a good athlete.

When he was 9-10, his dad came around for the first time.  Jason would visit with his dad on weekends.  Around that same time, Jason started getting into trouble at school, fighting with other kids.

His mom thought that he needed a father figure in his life and arranged for him to move in with his dad.  His dad signed him up for football.  He played halfback for the Fairhaven Blue Devils.

In middle school, he was accused of touching a female student inappropriately. Though the juvenile offense was eventually dismissed, he was shaken by the false allegations. He began to sour on life, feeling down and depressed.[2]  He felt he had nothing to live for, smoking weed and drinking with friends in the streets.  He became involved with the juvenile justice system again, with successive detentions of 4 months, 13 months, and 18 months in the juvenile youth center.  Whenever he was home, he was usually under house arrest.[3]

---

[2] *My dad wanted me to go back with my mom.*

[3] *I was released from juvenile custody on 9/8/2023.  I was home, trying to catch up on things I had missed, and getting home tutoring from the high school.*

*I came to Maine to visit with friends, and to chill out.  I was here for around a month.  I was enjoying life, being away from the city.  We started selling drugs together.  They had a beef with another drug dealer, over territory.  That's what led up to the drive by shooting.*

Upon his last release from juvenile detention on 9/8/2023, he went home.  He was living with his mom, getting home tutoring arranged by the high school, and catching up on things he had missed.

He came to Maine in January 2024, to visit with a friend, and to "chill out".  He liked being away from the city.  But these friends were involved in drug dealing, and Jason started to join their activities.  His friends had a "beef" with other drug dealers, over territory: "That's what led up to the drive by shooting."

He realizes now that his mistakes were "pointless" and "didn't get me anywhere".  He realizes that only his family has his back.  He wants to look beyond a life on the streets, and to make his family proud of him again.  He has started to embrace a dream of a life and career beyond prison.

He wants someday to become a real estate agent.  He's always enjoyed looking at nice houses and cars, and wants to build a career where he's around things that he likes, but not looking over his shoulder at someone chasing him.  He doesn't want to fall into bad habits, and bad crowds again ever.[4]

As he contemplates sentencing, he is grateful for the second chance, and hopeful about the future.  He has been dodging bullets for a long time now.  He's been shot twice.  He has escaped serious injury.  Upon indictment he faced a potential 20 year minimum

---

*I realize now that my mistakes were pointless, they didn't get me anywhere.  No one is here for me now, but my family.  I realize that there's more to life than the streets.  I should have been chasing my dreams instead of the streets.*

*I want to come home and become a real estate agent.  I've always liked nice houses, and cars.  I want to find a career that I will enjoy, and not fall into bad habits out of boredom.*

[4] *I feel really hopeful because I know what I need to do now.  I realize I've been dodging bullets for a long time now.  The life I was living got me show twice, and facing a 20 year minimum mandatory sentence.  I feel grateful for the second chance.*

mandatory sentence.  He is grateful for the plea agreement.  He is most grateful to his family, unlike most criminal defendants, he refers to his mother as "the best mom in the world".

## ARGUMENT

The minimum term of imprisonment is 10 years.  18 U.S.C. §924(c)(1)(A)(iii).  The guideline term of imprisonment is 10 years.  Id.  USSG 2K2 4(b).  The Court shall impose a term of supervised release of not more than 5 years.  18 U.S.C. §3583(b)(1).

The parties may agree that at specific sentence is the appropriate disposition of the case.  Rule 11(c)(1)(c) of Federal Rules of Criminal Procedure.  If the Court rejects the plea agreement, then it must do the following on the record, and in open court:

(A) Inform the parties that the Court rejects the plea agreement,

(B) advise the Defendant that the court is not required to follow the plea agreement and give the Defendant the opportunity to withdraw the plea, and

(C) advise the Defendant personally that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the plea agreement contemplated.

The Court should ensure that the sentence imposed is sufficient, but not greater than necessary, to address the purposes of sentencing.  18 U.S.C. §3553.  The Court should consider, as follows:

(A) The nature of circumstances of the offense and the history and characteristics of the Defendant.

(B) The need to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(C) The kinds of sentences and sentencing range established by the applicable category of the Defendant as set forth in the guidelines.

  (D) Any pertinent polling statement issued by the sentencing commission, the need to avoid unwarranted sentencing disparities among Defendant's with similar records who have been found guilty of similar conduct.

In this case, the Defendant has entered a "C" plea, with both parties agreeing to a sentence of 10 years. This sentence is sufficient, but not greater than necessary to address the purposes of sentencing.

  This is a serious offense, involving a drive by shooting in pubic, during daylight hours, with a nearby school bus full of children. Nonetheless, this Defendant was barely 18 at the time, recently released from juvenile detention, and unlike his co-Defendant's, in Maine for only a month. He was raised by a single mom, who did her best. He was affected by the absence of his father, who was incarcerated. His formal schooling was interrupted in early adolescence. He was mentored by older juveniles in the youth center. He was separated from his family for years. Jason loves his family. In zoom calls between Jason, his attorney and Jason's mom, Jason exudes love and affection for his mom, his siblings, his nieces and nephews. In those sessions, Jason does not ack like a gangbanger. His joy is infectious, spilling out in a wide smile. Despite all of its detours, the love in his heart has not been lost.

  Ten years is a long enough time to effect adequate deterrence and to protect the public, especially if Jason is provided with needed educational and vocational training. The male brain typically reaches full maturity in the mid to late 20's. The prefrontal cortex, the region of the brain responsible for risk assessment, impulse control, and considering long term consequences, finishes developing between age 25-30.

  By the time that Jason nears the end of his 10-year sentence, his penchant for risk taking will be reduced. His impulse control will be refined. His job skills will also be refined with needed vocational training.

His sentence of 10 years will not result in any unwarranted sentencing disparities with his co-Defendant's, because he was not convicted of the same conduct, was not in Maine for very long, and only participated in the tail end of the alleged drug conspiracy. He went along for the ride, but the ride was in motion before he ever arrived.

The greatest prognosticator of his potential for rehabilitation is his family support. When he refers to his mom as "the best mom in the whole world", he is leading with love, not anger and resentment. He is demonstrating his core values. She remains his role model, as well as his guiding light. He wants to make her proud.

His blind loyalty to others let him to this dark place. Now that the blinders are removed Jason can see what was hidden in plain view: The family that loves him like no one else. He is ready to stop dodging bullets, and to start aiming higher.

CONCLUSION

The Court should impose the agreed upon sentence of 10 years because it is sufficient, but not greater than necessary to accomplish the purposes of sentencing.

Dated: May 26, 2026

/s/ **Robert A. Levine**
Robert A. Levine, Esq.
Bar #3845
Attorney for Defendant
17 South Street
Portland, ME   04101
(207) 871-0036

## CERTIFICATE OF SERVICE

I hereby certify that I have today filed the foregoing using the CM/ECF system, which will cause a copy to be sent to all counsel of record.

Dated: May 26, 2026

/s/ **Robert A. Levine**
Robert A. Levine, Esq.
Bar #3845
Attorney for Defendant
17 South Street
Portland, ME   04101
(207) 871-0036